## THE STATE v. JOHN GABRIEL, Appellant.

Division Two, December 3, 1923.

1. **APPELLATE JURISDICTION: Felony: Jail Sentence and Fine.** The Supreme Court has jurisdiction of an appeal from a judgment in a criminal case in which the crime for which defendant was convicted is by statute made punishable by imprisonment in the penitentiary, although the punishment imposed was twelve months' imprisonment in the county jail and a fine of one hundred dollars.

2. **INFORMATION: Felonious Assault: No Intent: Sufficient Under Section 3264.** An information which charges that defendant "did then and there wilfully, unlawfully and feloniously make an assault . . . with an automatic pistol, loaded with powder and metal bullets, and did then and there shoot and wound him . . . and by said acts of assaulting and shooting did then and there feloniously and unlawfully endanger the life of him," etc., without

specifically charging that the assault was made with felonious intent, is drawn under Section 3264, Revised Statutes 1919, and sufficiently charges an offense under that statute, which declares, in substance, that if any person be wounded or his life endangered by the act of another, the person by whose act such wounding or danger of life is occasioned shall be punished, etc., when such act would constitute murder or manslaughter if the result of such act had been death. That section requires neither allegation nor proof of felonious intent; neither does it require an allegation that the wounding was done under such circumstances as would constitute murder or manslaughter if death had ensued, or that the act was done wilfully, intentionally, with malice or with a deadly weapon. [The word "necessary" in State v. Nieuhaus, 217 Mo. l. c. 344, corrected.]

3. **INSTRUCTION: Felonious Assault: Requiring Felonious Intent.** Where the information does not allege that the felonious assault was made with felonious intent, but is based on Section 3264, which does not require an allegation or proof of felonious intent, an instruction which requires the jury to find that the assault was made "with intent to kill or do great bodily harm" is not reversible error, but one based squarely on that statute would be more appropriate.

4. ————: **For State: Covering Whole Case: Omitting Defense: Others as Cure.** An instruction for the State purporting to cover the entire case which entirely ignores the defense of self-defense, to support which defendant has offered substantial evidence, is erroneous. Nor is the error cured by the giving of other separate instructions on self-defense.

5. ————: **Refusal.** Instructions asked by defendant which are comments on the evidence, or tender no issue involved in the case or relate to matters covered by other proper instructions given, are properly refused.

6. ————: **Felonious Assault: Impounding Stock.** The question whether the assaulting defendant or the assaulted party was right in a dispute caused by defendant taking up calves belonging to the assaulted party and requiring payment for the damage caused by them, is not an issue in the trial of defendant for felonious assault, and an instruction, asked by defendant and telling the jury under what circumstances defendant had a right to take up such stock and to require payment of damages, is properly refused. The only proper purpose of evidence relating to the calves is to show the state of feeling between the parties and to explain their acts and conduct at and in connection with the assault.

State v. Gabriel.

Appeal from Greene Criminal Court.—*Hon. Orin Patterson,* Judge.

REVERSED AND REMANDED.

*O. E. Gorman* and *Allen & Allen* for appellant.

(1)   The information may be good under Section 3264 if the case had been tried under that theory and section, but Instruction 1, which is the main instruction given by the court, and purports to submit all the issues and direct a finding, clearly shows that the case was tried under Section 3263. The information under that section is insufficient in that it fails to charge any intent. State v. Norman, 136 Mo. 1. (2)   If it is the contention of the State that the information is good under that section, then the court failed to submit the issues raised by the information by submitting the issue entirely upon Section 3263. The court fatally erred in so doing as an indictment or information must stand on its own bottom and cannot be supported or propped up by instructions which submit issues not raised by the pleadings. State v. Hesseltine, 130 Mo. 475; State v. Smith, 119 Mo. 447. (3)   An instruction cannot outrun the indictment, and the court had no right to submit an issue not tendered by the information. State v. Faulkner, 175 Mo. 546; State v. Lehman, 175 Mo. 619, 630; State v. Brotzer, 245 Mo. 299. (4)   Under an information for one crime an instruction must not embody another, and if it does so it is a fatal departure from the pleadings and is bad. State v. Young, 266 Mo. 724; State v. Hardiman, 277 Mo. 234. (5)   Where an information charged assault with intent to kill, and the instructions submitted the question whether the accused was guilty of assault with intent to kill or to do great bodily harm, it was error and not cured by a verdict finding the accused "guilty as charged in the information," for it cannot be affirmed that the jury was not misled. State v. Littler, 186 S. W. 1045.

(6)   Instruction 1, being the court's own instruction and purporting to cover the whole case and directing a finding, must embrace all the issues and the law applicable to them, and if it omits the element of self-defense raised by the pleadings and evidence, it is error. That omission is not cured by another instruction defining self-defense and asserting defendant's right thereto. State v. Helton, 234 Mo. 559; State v. Graves, 185 Mo. 713; State v. Lentz, 184 Mo. 223; Dameron v. Hamilton, 264 Mo. 116; State v. Wicker, 222 S. W. 1014.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1)   The information is sufficient.   Sec. 3264, R. S. 1919; State v. Bailey, 21 Mo. 488; State v. Bohannon, 21 Mo. 491; State v. Moore, 65 Mo. 606; State v. Agee, 68 Mo. 264; State v. Janke, 248 Mo. 380.   (2)   While it is true instruction numbered one uses the expression: "and that such assault was made by defendant with intent to kill or do great bodily harm," the jury found "defendant guilty in manner and form as charged in the information," etc.   The charge is felonious shooting and wounding with an automatic pistol, which endangered the life of Gordon Pierce.   This instruction required the jury to find that the pistol was used with the intention to kill or do great bodily harm.   These expressions "to kill or do great bodily harm' are each tantamount to "endangering the life" of one, and cast an additional burden on the State before the defendant could be found guilty.   The jury was not and could not have been misled.   There was only one single assault charged with only one single result, namely, "endangering the life" of the prosecuting witness.   Appellant has suffered no injury by the giving of this instruction in this form.   State v. Bunyard, 253 Mo. 356; State v. Chauvin, 231 Mo. 37.   (3)   Appellant objects to this instruction, because it does not declare the law of self-defense.   Self-defense is not "an essential

element of the offense'' defined by the statutes. State v. Lentz, 184 Mo. 235. It is a matter of defense and may and should be submitted in a separate instruction. State v. Wicker, 222 S. W. 1016.

DAVID E. BLAIR, J.—Defendant was convicted in the Criminal Court of Greene County of the crime of assaulting and wounding one Gordon Pierce with an automatic pistol, thereby endangering his life. Trial by jury resulted in a verdict of guilty as charged, and punishment by imprisonment in the county jail for twelve months and by a fine of one hundred dollars. After moving unsuccessfully for a new trial and in arrest of judgment, defendant was duly sentenced upon such verdict and thereafter appealed. This court has jurisdiction of the case because the conviction was for a crime punishable by imprisonment in the penitentiary, even though such punishment was not imposed by the jury. [State v. Woodson, 248 Mo. 705; State v. Underwood, 254 Mo. 469.]

A careful reading of the record has resulted in the conclusion that the facts immediately attending the difficulty, both from the viewpoint of the State and from the viewpoint of defendant, are fairly set forth in the statement of facts in the brief of the learned Attorney-General, from which we quote as follows:

"The evidence introduced on behalf of the State tended to prove the following:

"On the morning of December 2, 1921, in Greene County, Missouri, N. W. Pierce and his son, Gordon, were working about the house of the older Pierce, and defendant, John Gabriel, drove up in a wagon in front of the house and stopped and began making signs with his hand up to his face. The Pierces were about thirty feet from the road where defendant was. Gordon Pierce, the son, observing this conduct on the part of defendant, told him to drive on down the road, whereupon the defendant said, 'God damn you, I don't have to, I own as much of this road as you do,' and pulled back his sweater

301 Mo.—24.

and ran his hand into his pocket. Gordon Pierce then picked up a rock and threw it at defendant and hit him about the top of the hip. Defendant then climbed over the front of the wagon and stepped down on the ground. He then put his left hand upon the wagon body and the other hand over it and began shooting into the Pierce yard, which resulted in striking Gordon Pierce three times. Five or six shots were fired. Two shots struck Gordon in the right leg and one in the other knee. The bullets penetrated entirely through the leg. The wounds were dressed and treated by Dr. Arthur Knabb. Two of the shots went past him about the level of his head back toward his father and uncle, who were just back of him.

"It appeared that the Pierces and defendant were unfriendly and had had difficulty prior to this time about a road which crossed a part of the Pierce land, and about Pierce's stock bothering defendant, which the defendant put up and refused to release until he was paid for his trouble in doing so; and that the defendant made serious threats at various times towards the Pierces. It also appears in evidence that the defendant had been carrying a pistol prior to this time as result of the feeling existing between them, which fact was known to the Pierces. The pistol was a thirty-two automatic Colts, and held nine shots.

"The evidence offered on behalf of the defendant tended to prove the following:

"On the morning of the shooting defendant had been to a neighbor's with his wagon, and team and about ten o'clock, while on his way back, when he got to the corner of the Pierce yard, he saw old man Pierce and his son, Gordon, and a man by the name of Thompson, who was Pierce's brother-in-law, out at the corner of the house, talking, and Gordon was looking at the defendant with a very hard stare, and then started to head him off in front of the house. When Gordon got within three or four feet of the fence he stopped and picked up three rocks and said, 'You get down in the road, you God damn son-of-a-bitch, and I will knock you God damn

head off.' He then threw a rock and just missed defendant's head, and threw other rocks just as fast as he could. Thompson got ahead of the horses when defendant started to get his horses and dodged a rock, and Gordon threw another time and hit the horses, and then he hit defendant on the hip. Defendant then tumbled out of the wagon over the front wheel. He had his pistol in a belt and holster in his overalls, but did not draw or attempt to draw it until he was knocked out of the wagon and was still being thrown at. He then reached up and got hold of his wagon and pulled himself up and drew his gun and turned it into Gordon's legs, shooting at him, but not trying to kill him. At that time Gordon had thrown five rocks and had another up ready to throw when defendant shot. Defendant shot six times from a thirty-two Colts automatic, which held nine shots, but had only six in it at the time. After emptying the pistol defendant took hold of the wagon with the hand that had the pistol in it, and the lines with the other, and started on up the road toward his home, which was only a short distance from the Pierces.''

Previous threats of the Pierces and of the defendant were shown. A state of bad feeling had existed between them for some time. The familiar array of character witnesses was used, both by the State and the defendant, to show that defendant's reputation for truth and veracity was good or bad, depending apparently on the state of feeling of the various witnesses toward defendant and the Pierces. The issue of the character of Gordon Pierce and his father extended to their reputations for turbulence, quarrelsomeness, etc., as well as for truth and veracity. The usual division of opinion appeared and left the issue in such shape that the jury might well have declared a draw.

I. The sufficiency of the information is assailed. Omitting formal parts, it reads as follows:

"O. J. Page, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under

his oath of office informs the court that John Gabriel, late of the county and state aforesaid, on the 2nd day of December A. D. 1921, at the County of Greene and State of Missouri, did then and there willfully and feloniously make an assault in and upon one Gordon Pierce, with an automatic pistol, loaded with powder and metal bullets, and did then and there shoot and wound him the said Gordon Pierce and by said acts of assaulting and shooting, did then and there feloniously and unlawfully endanger the life of the said Gordon Pierce.

"Contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

The learned Attorney-General contends that said information is based on Section 3264, Revised Statutes 1919. Defendant claims it is based upon Section 3263, and is insufficient in that it fails to charge that the assault was made with felonious intent.

If the information is drawn under Section 3263, the contention of defendant that said information is fatally defective, in that it does not charge that the assault was made with felonious intent, would present a point for serious consideration. But we think the information sufficiently charges an offense under Section 3264. If any person be wounded or his life endangered by the act of another, the person by whose act such wounding or danger of life shall be occasioned shall be punished, etc., when such act would constitute murder or manslaughter, if the result of such act had been death. Such is the substance of Section 3264, applicable to the allegations and facts in this case.

The information charges a felonious wounding by defendant with an automatic pistol, loaded with powder and metal bullets, and that, by such wounding, the defendant feloniously and unlawfully endangered the life of Gordon Pierce. It charges wounding with an instrument likely to produce death. If death had resulted and the wounding had not been justifiable or excusable, the

offense clearly would have been murder or, at the least, manslaughter. It was unnecessary to allege in the information that the killing was done under circumstances which would constitute murder or manslaughter, if death had ensued, or that the act was done willfully, intentionally, with malice or with a deadly weapon. [Jennings v. State, 9 Mo. 862; State v. Moore, 65 Mo. 606; State v. Bailey, 21 Mo. 1. c. 484; State v. Bonhannon, 21 Mo. 490; State v. Janke, 238 Mo. 378.]

In State v. Nieuhaus, 217 Mo. 1. c. 344, as officially reported, a contrary rule is announced. We have examined the original opinion, written by GANTT, J., and find that he used the word "unnecessary," whereas the case as reported uses the word "necessary." Even if the original opinion had used the word "necessary," it would clearly have been a clerical error, as the court there approved an information which omitted the allegations above mentioned and cited as authority all of the earlier cases we have above cited. Section 3264 requires neither allegation nor proof of felonious intent. We think the information well enough states an offense under said Section 3264.

II.   Instruction numbered one, given by the trial court, was as follows:

"The court instructs the jury that if you find and believe from the evidence that in the County of Greene and State of Missouri on or about the 2nd day of December, 1921, the defendant made an assault upon the prosecuting witness, Gordon Pierce, with an automatic pistol and did shoot and wound the same Gordon Pierce with same pistol, that said pistol was a deadly weapon, that is to say, a weapon likely, as used, to produce death or great bodily harm, and that he did so willfully, that is to say, intentionally and not by accident, and that such assault was made by defendant with intent to kill or do great bodily harm. You will find defendant guilty, and assess his punishment at a term in the penitentiary of not less than two years nor

Ignoring Defense.

more than five years, or in the county jail for not less than six months or by a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months or by simply a fine of not less than one hundred dollars.''

Said instruction is assailed because it does not include the issue of self-defense. It was an instruction purporting to cover the entire case. The instruction entirely ignored the defense of self-defense. Defendant might have shot Pierce intentionally and thereby endangered his life and yet may have been entirely justified in so doing in the necessary defense of his person. The instruction was therefore erroneous and constitutes reversible error. [State v. Helton, 234 Mo. 559; State v. Stubblefield, 239 Mo. 526.] The instruction required the finding of no fact which negatived the defense of self-defense, as in State v. Wicker, 222 S. W. (Mo.) l. c. 1016. Separate instructions on self-defense given by the court did not cure this error.

Defendant further criticised said instruction on the ground that it is based upon Section 3263, instead of Section 3264, in that it required the finding of an intent to kill or do great bodily harm. While this Felonious Intent. does not constitute reversible error, for the reasons pointed out in State v. Bunyard, 253 Mo. 347, 356, and cases there cited, yet, upon re-trial, the court should base its instructions squarely upon, and use language appropriate to, Section 3264.

III. In his motion for new trial defendant complained of the refusal of requested Instructions A, B, C, D, E and F. In his assignments of error in his brief in this court, he complains only of Instruction C. Instructions A, B, D, E and F were properly refused, either because they were comments upon the evidence or tendered issues not involved in the case or were covered by other instructions given by the court.

Instruction C was as follows:

State v. Gabriel.

"The court instructs the jury that there has been evidence introduced showing that the defendant took certain calves belonging to the prosecuting witness or his father and in this connection you are instructed that if such stock was running at large and on the premises of the defendant, or in the public highway, *Impounding* *Stock.* and not in charge of any person, the defendant had a right to take up such stock and to require the payment of a reasonable sum for taking up such stock and caring for same, and to require the payment of the damage, if any, that said stock had inflicted on defendant's premises while so running at large."

The question of whether defendant or the Pierces were right in the dispute, caused by defendant taking up calves belonging to the Pierces and requiring payment for damages claimed to have been caused by them, was not properly an issue in the case and defendant was not entitled to the instruction requested. It raised an issue the jury was not entitled to consider and could not try in the case at bar. The only proper purpose of the evidence upon the calf matter was to show the state of feeling between defendant and the Pierces and to explain the acts and conduct of defendant and Gordon Pierce at and in connection with the shooting of Pierce by the defendant and the rock-throwing by said Pierce.

IV. We think it unnecessary to consider other complaints made by defendant, since they are of such a character that they will not likely occur upon re-trial. It may not be out of place to suggest that counsel should not be permitted to go into minute details of outside transactions, admissible solely for the purpose of showing the state of feeling existing between defendant and the Pierces, or the animus or interest of the other witnesses.

For the error pointed out, the judgment is reversed and the cause remanded. All concur.